

FILED
IN OPEN COURT

JUN 3 0 2026

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

WENSHEN XU,
     a/k/a "Alex,"
     a/k/a "Alex Xiu,"
     a/k/a "Alex Tsui,"
     a/k/a "Chino,"
     a/k/a "Man Sum Tsui,"

     *Defendant.*

No. 1:25-CR-231 (MSN)

## STATEMENT OF FACTS

The United States and the defendant, WENSHEN XU, (hereinafter, "the defendant"), agree that the following facts are true and correct and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1. Beginning on a date unknown but from at least in or around November 2023 and continuing to on or about July 17, 2025, in the Eastern District of Virginia, by virtue of the defendant having been first brought to the Eastern District of Virginia pursuant to 18 U.S.C. § 3238, and elsewhere out of the jurisdiction of any particular state or district, including Colombia, Honduras, and Guatemala, the defendant knowingly and intentionally combined, conspired, confederated, and agreed with others, both known and unknown, to distribute and possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing, intending, or having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(a)(3), and 960(b)(1)(B) and 18 U.S.C. § 2.

2.     Beginning on a date unknown but from at least in or around November 2023 and continuing to on or about July 17, 2025, in the Eastern District of Virginia, by virtue of the defendant having been first brought to the Eastern District of Virginia pursuant to 18 U.S.C. § 3238, and elsewhere out of the jurisdiction of any particular state or district, including Colombia, Guatemala, and Honduras, the defendant knowingly and intentionally combined, conspired, confederated, and agreed with others to commit offenses against the United States in violation of 18 U.S.C. § 1956, to wit: (1) to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, the distribution of controlled substances and conspiracy to do the same in violation of 21 U.S.C. §§ 841(a)(1) and 846, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, or control of the proceeds and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and (2) to conduct financial transactions affecting interstate and foreign commerce, which involved property represented to be the proceeds of specified unlawful activity, that is, the distribution of controlled substances and conspiracy to do the same, in violation of 21 U.S.C. §§ 841(a)(1) and 846, with the intent to conceal and disguise the nature, location, source, ownership, or control of the property believed to be the proceeds of said specified unlawful activity, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(a)(3)(B), and 1956(h).

3.     On July 17, 2025, in Guatemala and within the Eastern District of Virginia, by virtue of the defendant having been first brought to the Eastern District of Virginia pursuant to 18 U.S.C. § 3238, the defendant knowingly conspired with others, known and unknown, to provide "material support or resources," as that term is defined in 18 U.S.C. § 2339A(b), to the Cartel Jalisco Nueva Generacion ("CJNG"), knowing that the CJNG was a designated terrorist

2

organization, as defined in 18 U.S.C. § 2339B(g)(6). The "material support or resources" that the defendant conspired to provide included assistance with coordinating the safe passage of cocaine-laden aircraft, represented to belong to the CJNG, from Cali, Colombia, for eventual transportation to the United States.

4.     The defendant was a prolific cocaine trafficker based in Honduras who used his transportation network and contacts in Latin America to ship multi-kilogram quantities of cocaine sourced from Colombia and elsewhere, knowing and intending the ultimate destination to be the United States and Europe. The defendant's drug transportation network included access to airstrips, airports, armored cars, couriers, and associates—including multiple employees in Honduras whom he led and managed —located throughout Latin America, as well as access to customers in the United States.

5.     In addition to his involvement in drug trafficking, the defendant was a crucial member of an international money laundering conspiracy that served foreign drug trafficking organizations ("DTOs") by gathering, laundering, and repatriating proceeds derived from the unlawful sale of controlled substances in the United States, including the sale of cocaine and fentanyl. The defendant knew that funds being laundered were narcotics proceeds.

6.     The defendant and his co-conspirators used various secretive and clandestine methods to conceal the nature, location, source, ownership, or control of the narcotics proceeds from detection. For example:

　　　　a. The defendant and his co-conspirators regularly received bulk cash from representatives of DTOs based in Mexico;

3

b. The defendant and his co-conspirators collected and transported drug proceeds across state lines so that additional money laundering transactions could be conducted several states removed from where the proceeds were generated;

c. The defendant and his co-conspirators used encrypted communications platforms to discuss their illegal activities, including "WeChat" and "WhatsApp";

d. The defendant and his co-conspirators confirmed their authorization to collect drug cash from DTO representatives by presenting verification codes, which were often serial numbers taken from U.S. or foreign currency notes;

e. The defendant and his co-conspirators used cryptocurrency wallets and bank accounts in the United States, China, Mexico, and elsewhere to deposit and conduct financial transactions with drug proceeds, including those derived from the sale of cocaine and fentanyl.

7. The defendant and his co-conspirators profited through commissions based on the amount of money involved in each financial transaction.

8. The object of the money laundering conspiracy was to receive proceeds from the distribution of narcotics, engage in financial transactions to conceal and disguise those proceeds from detection, and earn a commission for laundering the proceeds.

9. In furtherance of the charged drug trafficking and money laundering conspiracies, the defendant, knowing that the CJNG was a designated foreign terrorist organization, conspired with a co-conspirator based in Colombia to assist individuals claiming to represent the CJNG, an organization that engages in widespread violence in Mexico and is responsible for the illegal importation of vast quantities of illicit narcotics, including cocaine and fentanyl, into the United States. The defendant agreed to assist these individuals with the transportation of multi-kilogram

4

quantities of cocaine and logistics, including the use of airports and airstrips, as well as by connecting them with additional co-conspirators.

10.    The defendant performed the following overt acts, among others, in furtherance of the charged conspiracies:

a. On November 15, 2023, in Arlington, Virginia, co-conspirators working with the defendant, including CC-1, a prolific money launderer based in China who employs co-conspirators in numerous countries to launder drug proceeds, and CC-2, one of CC-1's U.S.-based co-conspirators, received $100,000 that were represented to be derived from the sale of cocaine in the United States. Following the receipt of the cash, the defendant, CC-1, CC-2, and others caused an equivalent amount of cryptocurrency, less a commission, to be transferred to a cryptocurrency wallet represented as belonging to a drug trafficking client;

b. On March 24, 2024, in Fort Lauderdale, Florida, the defendant met with individuals representing themselves to be cocaine traffickers to coordinate potential drug trafficking and money laundering transactions;

c. On June 12, 2024, in Bogota, Colombia, the defendant met with individuals claiming to be involved in cocaine trafficking to plan additional drug trafficking and money laundering transactions. During this meeting, the defendant viewed fifty (50) kilograms of cocaine that were represented as being destined for the United States;

d. In September 2024, the defendant and his co-conspirators laundered approximately $120,000 represented to be derived from the sale of cocaine in the United States using Tether (USDT) funneled through various cryptocurrency

wallets, including wallets in the names of foreign nationals. The defendant then arranged for two couriers in Colombia to deliver an equivalent amount of Colombian pesos, less a commission, to an individual claiming to work for the drug trafficking client in Colombia; and

e. On July 17, 2025, in Guatemala City, Guatemala, the defendant and a co-conspirator met with individuals claiming to be involved in trafficking cocaine into the United States on behalf of the CJNG and agreed to assist these individuals with transporting multi-kilogram quantities of cocaine for eventual importation into the United States. The defendant agreed to do so knowing that the CJNG was a designated foreign terrorist organization.

11.    The defendant's knowledge of the nature and source of the money he laundered was evident in the nature of his transactions with co-conspirators in which he and co-conspirators would clandestinely meet at various locations, exchange verification tokens, and then transfer large quantities of bulk cash and cryptocurrency as well as in the steps he and others took to avoid detection by law enforcement, including the frequent use of aliases, the use of multiple cryptocurrency wallets, and the avoidance of using traditional banking systems.

12.    In addition to the defendant's network of co-conspirators and employees in Colombia and Honduras, he worked with a U.S.-based money laundering network affiliated with a major international money launderer based in mainland China, CC-1. CC-1's U.S.-based network included two co-conspirators, CC-2 and CC-3, who acted as "dispatchers" for CC-1 and worked to arrange money pickups in the U.S. for CC-1. CC-2, who assisted the defendant and CC-1 with the November 2023 money laundering transaction, was responsible for laundering over $14,000,000 on behalf of CC-1's network. CC-3, another U.S.-based "dispatcher" for CC-1, was

6

responsible for laundering over $8,000,000. The defendant admits and agrees that these amounts were reasonably foreseeable to him. Accordingly, in addition to the approximately $220,000 in law enforcement funds that the defendant laundered, the defendant agrees that the amount laundered by the defendant and his co-conspirators during the time of the charged conspiracy was at least $22,000,000. The defendant agrees to the imposition of a money judgment of $22,000,000, representing the total amount laundered by him and his co-conspirators.

13.    This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

14.    The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

15.    This Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether it is presented to or accepted by a court.

16.    The defendant waives any rights that he may have under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of this Statement of Facts in any such proceeding.

Todd W. Blanche
Acting Attorney General
Department of Justice

By: _Edgardo Rodriguez_
Edgardo J. Rodriguez
Christopher M. Carter
Assistant United States Attorneys

Margaret A. Moeser
Chief
Money Laundering, Narcotics and Forfeiture Section

By: _Chelsea Rooney_
Chelsea Rooney
Trial Attorney

7

After consulting with my attorneys with the assistance of a language interpreter and pursuant to the plea agreement entered into this day between the defendant, WENSHEN XU, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____

WENSHEN XU
Defendant


We are the defendant's attorneys. We have carefully reviewed the above Statement of Facts with the defendant with the assistance of a language interpreter. To our knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____

Robert Feitel
Attorney for the Defendant

_____

Sandi Rhee
Attorney for the Defendant

8